1  Larry J. Wulkan (#021404)
   **STINSON LLP**
2  1850 North Central Avenue, Suite 2100
   Phoenix, Arizona 85004-4584
3  Tel: (602) 212-8511
   Fax: (602) 586-5275
4  Email: larry.wulkan@stinson.com

5  Jacob D. Koering*
   **MILLER CANFIELD PADDOCK AND STONE, P.L.C.**
6  225 W. Washington
   Suite 2600
7  Chicago, Illinois 60606
   Tel: (312) 460-4272
8  Email:  koering@millercanfield.com

9  *Admitted Pro Hac Vice*

10  Attorneys for Defendant

11
                    **IN THE UNITED STATES DISTRICT COURT**
12
                      **FOR THE DISTRICT OF ARIZONA**
13

14  Ty Kempton, individually and on behalf        No. CV-19-2156-PHX-DJH
    of all others similarly situated,
15                                                 **MOTION TO DISMISS**
                        Plaintiff,
16  v.

    Life for Relief and Development, a
17  California corporation,

18                      Defendant.

19

20        Defendant Life for Relief and Development ("Life for Relief") respectfully

21  moves this Court to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(2)
22
    and (3)[1], or to transfer this case to the Eastern District of Michigan pursuant to 28
23
24  U.S.C. §§ 1406 or 1404.  Alternatively, if this Court elects to retain this case, Life for

25  ────────────────────
    [1] In accordance with the Court's order of April 3, 2019 (Doc. No. 6), the parties have
26  conferred to determine whether an amendment could cure deficiencies in the Complaint.
    To that end, the undersigned counsel for Life for Relief sent Plaintiff's counsel a
27  detailed letter outlining the facts and law supporting the Rule 12(b) portions of this
    motion.  Less than an hour after receiving this motion, Plaintiff's counsel responded
28  refusing to amend the Complaint without further explanation.  Therefore, this motion is
    necessary.  The communications involved in this exchange are attached hereto as
    collective Exhibit 1.

Relief moves the Court to stay these proceedings while awaiting relevant, imminently pending guidance from the Federal Communications Commission on key aspects of the applicable statute, the Telephone Consumer Protection Act.  The reasons this motion should be granted are explained more fully in the attached memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      Introduction

This case is the second brought by proposed class representative Ty Kempton ("Plaintiff") against defendant Life for Relief, a non-profit charity,[2] re-asserting claims regarding eight text messages Plaintiff allegedly received over a two-year period. Plaintiff claims that these eight texts violate the Telephone Consumer Protection Act ("TCPA"), which prohibits texting a cell phone number without consent by using an "automatic telephone dialing system" or "ATDS".  Plaintiff claims the texts harmed him by "disturbing [his] use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware."  Not incidental to the rash of TCPA class action filings like this one, the TCPA also provides a minimum $500 penalty for each text found to violate the TCPA.  To that end, Plaintiff and his class action lawyers wish to certify a national class of all persons "similarly situated" for a four-year period.

---

[2] "Life for Relief and Development is a global humanitarian relief and development organization, headquartered in Southfield, Michigan, USA.  Life is dedicated to providing humanitarian aid to people regardless of race, gender, religion and cultural background. . . .  Life is in Consultative Status with the Economic and Social Council of the United Nations.  It is also a member of InterAction, the largest alliance of U.S. based NGO's and partners with humanitarian agencies such as UNICEF, Brothers Brother Foundation and World Medical Relief. . . .  Over the past 26 years, Life has distributed over $462 million in humanitarian aid and relief to over 45 countries. . . ." *See* www.lifeusa/org/about.

CORE/9991000.6389/152910242.1

Mr. Kempton made these same claims not once but twice in a prior-filed case against Life for Relief in the Eastern District of Michigan. (*See* Doc. Nos. 1 (Class Action Complaint) and 9 (Amended Class Action Complaint) in Case No. 3:18-cv-13404-RHC-SDD, Eastern District of Michigan (the "Michigan Case").)   He then voluntarily dismissed those claims after Life for Relief filed a substantive motion to dismiss. (*See* Doc. Nos. 10 (Life for Relief's Motion "Michigan MTD")) and 14 (Kempton's Notice of Voluntary Dismissal) in Michigan Case.)   As Life for Relief's motion pointed out, Mr. Kempton failed to plausibly plead that text messages were sent by an ATDS. (Michigan MTD at 5-10.)   The motion also noted that the law in this area was in flux, and that many of the issues involved in the case would be dependent upon an imminent ruling from the guiding regulatory body on the TCPA, the Federal Communications Commission ("FCC"). (*Id.* at 10-14.)   Thus, Life for Relief asked that – as an alternative to dismissal – the court stay the case pending the FCC's ruling on the relevant issues, such as how "consent" is to be interpreted for cellular numbers (like Plaintiff's) that were transferred from a prior owner who had consented to receiving texts. (*Id.*)

Apparently realizing the futility of his claims, Mr. Kempton has now forum-shopped his case down to Arizona, a state in which Life for Relief has no physical or other presence warranting the exercise of jurisdiction.   And he did so without waiting for the FCC's ruling, despite knowing that numerous key issues related to this dispute remain in near-term limbo.

CORE/9991000.6389/152910242.1

Plaintiff's re-filed complaint was clearly done in a rush to try and gain a jurisdictional advantage.  But it was also done in a way that requires its dismissal, because Plaintiff's complaint lacks factual support for dragging Life for Relief into court in Arizona.  Plaintiff's complaint includes only three threadbare, conclusory, and vague assertions of ties between Life for Relief and Arizona.  The laws of pleading, jurisdiction, and venue require more.  Without specific recitations showing ties between Life for Relief and Arizona, Plaintiff's personal jurisdiction claims fail.  And with that failure, any claim of proper venue in Arizona also fails.

Should this Court disagree with Life for Relief on the problems with Plaintiff's jurisdictional claims, this clearly forum-shopped case can and should nevertheless be transferred back to the Eastern District of Michigan in the interests of justice and for the convenience of the parties.  Or, this Court should stay this case pending a decision from the FCC on the key issues underlying this action.

**II.    Plaintiff Lacks Facts Showing Sufficient Contacts Between Life for Relief and Arizona to Support the Exercise of Personal Jurisdiction or Venue in this District**

Faced with unfavorable law in its original venue and with an impending ruling from the FCC that is likely to undercut its claims, Plaintiff rushed to file new claims against Life for Relief in Arizona without enough facts to support jurisdiction.  As demonstrated by the pleadings and the facts of this case, Plaintiff lacks facts supporting either personal jurisdiction or venue over Life for Relief in this District.

*A.    The Complaint Lacks Facts Showing Personal Jurisdiction Over Life for Relief is Proper in Arizona, So Rule 12(b)(2) Requires Dismissal*

4

CORE/9991000.6389/152910242.1

A federal court may only adjudicate a matter if it has jurisdiction over the parties. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). In Arizona, absent a federal statute to the contrary the exercise of personal jurisdiction over non-resident defendants is governed by its long-arm rule. *Menken v. Emm*, 503 F.3d 1050, 1056-57 (9th Cir. 2007). That rule, bounded by the limits of federal Due Process, "requires that nonresident defendants have certain minimum contacts with [Arizona], so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); *see also* Ariz. R. Civ. P. 4.2(a). Where a defendant's contacts are "substantial" or "continuous and systematic," that defendant is considered "present" in the forum for all purposes, and subject to "general jurisdiction." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006). Absent those substantial, continuous, and systematic contacts, the defendants' "minimum contacts" to Arizona must be tied to the cause of action being asserted, which is called "specific jurisdiction." *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

Life for Relief moves to dismiss the claim against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Therefore, Plaintiff bears the burden of demonstrating the actions of nonresident Life for Relief support a claim of general or specific jurisdiction. *Menken*, 503 F.3d at 1056. And just like other factual allegations, that burden requires Plaintiff to include facially plausible factual allegations in his complaint, not labels or conclusions, that support the personal jurisdiction claim. *MGA Entertainment, Inc. v. Innovation First, Inc.*, 525 Fed. Appx. 576, 578 (9th Cir. 2013),

CORE/9991000.6389/152910242.1

citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Palnik v. Westlake Entertainment, Inc.*, 344 Fed. Appx. 249, 251 (6th Cir. 2009) ("[I]t remains the plaintiff's burden and the complaint must have 'established with reasonable particularity' those specific facts that support [personal] jurisdiction."). "Facially plausible" pleadings, in turn, require "factual content that allows the court to draw the reasonable inference" asserted by the plaintiff. *Iqbal*, 556 U.S. at 678, citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007). "Threadbare recitals … supported by mere conclusory statements, do not suffice." *Id*., citing *Twombly*, 550 U.S. at 555.

Plaintiff's personal jurisdiction allegations in this case are limited to three factually unsupported and threadbare allegations. (Doc. No. 1 ("Complaint"), ¶¶6, 8.) Indeed, the allegations are so vague and conclusory that it is unclear whether plaintiff is claiming this Court has general or specific jurisdiction over Life for Relief. Plaintiff asserts two general-jurisdiction-like conclusions that Life for Relief "conducts business throughout this District, the state of Arizona, and the United States," (Complaint, ¶6), and "solicits business within this District," (Complaint, ¶ 8). But it also asserts a specific-jurisdiction-like conclusion that "the wrongful conduct giving rise to this case occurred in this District." (Complaint, ¶8.) While the Court can dismiss these allegations as "mere conclusory statements", *Iqbal*, 556 U.S. at 678, they do not support the assertion of jurisdiction anyway.

Allegations that Life for Relief "conducts business" and "solicits business" in Arizona are insufficient to support the application of general jurisdiction. The standard

6

CORE/9991000.6389/152910242.1

for general jurisdiction is high; contacts not only must be "continuous or systematic" with the state, they must "approximate physical presence." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). "Put another way," not only must a defendant "step[] through the door" of the state, it must also "[sit] down and [make] itself at home." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002). Conducting or soliciting business in a state, alone, is insufficient to invoke general jurisdiction. *Schwarzenegger*, 374 F.3d at 801.

Similarly, the conclusion that some relevant "conduct … occurred in this District" is insufficient to support a claim of specific jurisdiction. An allegation of specific jurisdiction based on conduct "in this District" requires more than just the existence of conduct. Instead, the allegations must show that the conduct was defendant's conduct, and that it "purposefully avail[ed]" itself of the of the benefits and protections of the laws of the state by allowing or promoting the transaction of business in Arizona. *See Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990). The inquiry thus does not focus on conduct generally, but instead "focuses on the relationship between the defendant, the forum, and the litigation…and the ***defendant's conduct and connection with the forum state*…**." *See Batton v. Tennessee Farmers Mut. Ins. Co.*, 153 Ariz. 268, 271 (1987), citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 70, 775 (1984), *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), emphasis added.

Plaintiff's allegations fail to meet this standard on every level. Plaintiff's assertion that some unnamed "conduct" occurred in Arizona fails to specify who

7

CORE/9991000.6389/152910242.1

performed the conduct, whether that party purposefully engaged in that conduct, or how that conduct relates to Plaintiff's claims.  Even if we assume that Plaintiff was referring to Life for Relief in this section of its complaint, his failure to specify what conduct is being invoked renders it impossible to tell if and how Life for Relief may have "purposefully availed" itself of Arizona's laws with that unnamed conduct.  Under the pleading standards outlined by the Supreme Court in *Iqbal* and *Twombley*, these kinds of unsupported and unexplained allegations are insufficient as a matter of law.

To be clear, the few specific allegations of conduct Plaintiff claims were performed by Life for Relief do not save Plaintiff's jurisdictional claims.  Plaintiff's allegations are that jurisdiction is supported based on "wrongful conduct" that supposedly occurred "in this District."  (Complaint, ¶ 8.)  While Plaintiff claims Life for Relief sent him text messages, nowhere does Plaintiff assert anywhere that the text messages were either sent or received in Arizona.  In fact, none of the actual facts support any "conduct" by Life for Relief in this District, since Life for Relief (1) is not an Arizona corporation, (2) lacks any physical presence in Arizona, (3) lacks any full-time employees in Arizona, and (4) has never sent text messages from within Arizona. (*See* Declaration of Dr. Hany Saqr in Support of Motion to Dismiss and/or Transfer ("Saqr Dec."), attached hereto as Exhibit 2, at ¶¶4-7.)

The net effect of Plaintiff's pleadings on personal jurisdiction shows no support for personal jurisdiction over Life for Relief in this case.  The allegations are at best "threadbare recitals" and "mere conclusory statements" that should be discounted by this Court.  And what allegations are made do not support a claim of either general or

8

1  specific jurisdiction because they fail to show any connection between Life for Relief,

2  the claims of this case, and Arizona.  The complaint should therefore be dismissed

3  because of a lack of personal jurisdiction over Life for Relief.

4
5       *B.     The Lack of Personal Jurisdiction over Life for Relief Dooms Any Claim of Proper Venue in this District, Requiring Dismissal Pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a)*
6

7       The lack of personal jurisdiction over Life for Relief also means that this Court is

8  an improper venue for this dispute.  Absent a more specific statute to the contrary, a

9  plaintiff's claims may only be brought in the district courts authorized by the federal

10
11  venue statute.  28 U.S.C. § 1391.  Under that statute, corporations can be sued where

12  they are subject to personal jurisdiction.  *See* 28 U.S.C. § 1391(b)(1); 28 U.S.C. §

13  1391(c)(2) (allowing suit where a corporation "resides", and defining corporate

14  residency as where they are subject to "personal jurisdiction"); *see also* 28 U.S.C. §

15
16  1391(b)(3) (providing catch-all venue for defendants where they are subject to

17  "personal jurisdiction with respect" to the suit).  Alternatively, assuming the existence

18  of personal jurisdiction, a claim may be brought against a defendant where a

19
20  "substantial part of the events or omissions giving rise to the claim occurred", or if the

21  action involves property, a where "a substantial part" of that property is "situated."  28

22  U.S.C. § 1391(b)(2).

23       A defendant who believes a case has been brought in the improper venue may

24  move to dismiss or transfer the case pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. §

25
26  1406(a).  Under that statute, dismissal and/or transfer is mandatory when venue is

27  improper, requiring that the court "***shall*** dismiss, or if it be in the interest of justice,

28

9

transfer such case to any district or division in which it could have been brought." *Id.*, emphasis added.

In this case, venue is not proper under § 1391(b) because there is no personal jurisdiction over Life for Relief in Arizona, and because there is no non-conclusory pleading showing any connection between the "events or omissions" that are asserted by the Plaintiff and Arizona.[3]  The reasons there is no personal jurisdiction here are discussed above, and show that venue is improper under § 1392(b)(1) and (3).  (*See* Section II.A., *supra.*)

As for the "events or omissions" venue inquiry under § 1391(b)(2), Plaintiff's complaint fails to plead any conduct by Life for Relief that is tied to Arizona.  The venue inquiry "focuses on 'relevant activities of the defendant, not of the plaintiff'", and therefore requires some conduct by a defendant to be specified.  *See Renteria v. Ramanlal*, 2009 WL 73675, at *6, Case No. CV-07-00658-PHX-ROS (D. Ariz. Jan. 9, 2009), citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).  The relevant conduct for this inquiry must be "substantial", and "[d]istrict courts are to take the word 'substantial' seriously; 'for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question …."  *Id.*, citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).

Here, all Plaintiff has pled is that there was some "wrongful conduct" that occurred in this District.  (Complaint, ¶ 8.)  By failing to state what the conduct is,

---

[3] Plaintiff has not asserted a claim in which "property … is the subject of the action…." *See Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu*, 660 F.Supp. 1536, 1543 (S.D.Tex.1987) ("more reasonable construction of clause ['property that is the subject of the action'] would make it applicable to suits involving property disputes or in rem actions").

10

1    Plaintiff has similarly failed to establish that the unnamed conduct is "substantial" under

2    the venue rules.  Indeed, as discussed above, it is not even clear that the alleged conduct

3    is Life for Relief's conduct, or whether Plaintiff is referring to his own conduct, and

4
     nowhere does Plaintiff allege that ***any specific conduct*** occurred in Arizona.

5
          Therefore, in addition to a lack of personal jurisdiction, venue is improper in this
6

7    District, and the case should be dismissed.  28 U.S.C. § 1406.

8         *C.    Plaintiff's Refusal to Amend Demonstrates any Amendment Here Would*
          *be Futile*
9

10        Early in this case, this Court entered an order requiring the parties to meet and

11   confer prior to filing a motion to dismiss under Fed. R. Civ. P. 12(b) to determine if the

12
     defects that are the subject of the motion "can be cured by filing an amended pleading"
13

14   and whether the filing of a motion to dismiss "can be avoided."  (Doc. No. 6 at 1.)  The

15   clear purpose of that order was to avoid the time and expense of motions to dismiss that

16   are quickly followed by requests to amend curable defects.

17
           Life for Relief, consistent with this Order, outlined the factual and legal bases
18

19   for the Rule 12(b) aspects of this motion in a communication to Plaintiff's counsel, and

20   asked Plaintiff to consider amending.  (*See* Collective Exhibit 1.)  Plaintiff refused.

21   (*Id.*)  Importantly, Plaintiff did not assert that an amendment would render Life for

22
     Relief's motion moot or cure the underlying factual problems with Plaintiff's
23

24   jurisdictional and venue claims.  (*Id.*)

25        Courts in this district have found that a refusal to amend following the parties'

26   meet and confer requirement is equivalent to an admission that a further amendment

27
     would be futile.  *See Matter of Estate of Williams*, 2013 WL 12190484, *3 (D. Ariz.
28

11

CORE/9991000.6389/152910242.1

Oct. 24, 2013).  While normally leave to amend is granted "when justice so requires", the admission of futility provides justification for denial of a further right to amend.  *Id*. Following Plaintiff's refusal to even discuss amendment, this Court should take that refusal as an admission that any amendment would be futile and deem the pleadings final for purposes of this motion.  In turn, because Plaintiff has failed to plead the existence of personal jurisdiction or venue, Plaintiff's claims should therefore be dismissed entirely and without leave to amend.

**III.    Plaintiff's Blatant Forum Shopping, along with the Convenience of the Parties, Warrants Transfer Back to the Eastern District of Michigan**

Were this Court to find it has personal jurisdiction over Life for Relief, and to also find that venue is proper in this District, the Court should nonetheless transfer this case back to the Eastern District of Michigan under 28 U.S.C. § 1404 because it is in the interests of justice, and is the more convenient forum for the witnesses and the parties. Under §1404, a court may transfer a case to another district "[f]or the convenience of the parties and witnesses, [and] in the interest of justice…."  The analysis under §1404 is based on an "individualized, case-by-case consideration of convenience and fairness." *Steward Org., Inc. v. Ricoh Corp*, 487 U.S. 22, 29 (1988), quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  The determination is based on several factors, including the convenience of the witnesses and ease of access to the evidence.  *Id*. While normally the plaintiff's choice of forum is given weight, that preference is lowered significantly in class-action cases, *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947); *Lou v. Belzberg*, 834 F.2d 739, 739 (9th Cir. 1987), and disregarded

CORE/9991000.6389/152910242.1

1    when forum-shopping is evident, *see Foster v. Nationwide Mut. Ins. Co.*, 2007 WL

2    4410409, \*2 (N.D. Cal. Dec. 14, 2007).

3          Here, the history and facts of this action demonstrate that the Eastern District of

4    Michigan is the more just and convenient forum for this dispute.  Plaintiff originally

5    agreed that Michigan was the proper forum for this dispute when it filed not one but two

6    complaints in that district and asserted that venue was proper in that district.  (*See* Doc.

7    Nos. 1, ¶ 10 and 9, ¶ 10 in Michigan Case.)  Plaintiff's filing in that district made sense,

8    since Life for Relief's headquarters are in that district, as are its documents, employees,

9    and facilities that are likely to be involved in this action.  (Saqr Dec. at ¶¶ 4, 8.)  It was

10   only when facing substantive dismissal that Plaintiff tried to shift location to this

11   district.  In other words, instead of substantively defending its claims, Plaintiff sought

12   another bite at the apple through dismissal and re-filing.  This kind of blatant forum

13   shopping is the exact kind of activity that the Ninth Circuit says should be

14   "discouraged."  *See United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1101, 1114-15

15   (9th Cir. 2001).  Thus, not only is Plaintiff's forum-shopping unjust, it is specifically

16   disfavored in this Circuit.

17        Michigan is also more convenient for all parties because of the proximity to

18   likely discovery sources.  As noted previously, the relevant documents and witnesses

19   are all likely to be in the Eastern District of Michigan.  (Saqr Dec., ¶ 8.)  And, given that

20   Plaintiff seeks to certify this matter as a nationwide class action, maintaining a case in

21   this District instead of where the discovery sources are located will not just

22   inconvenience Life for Relief, but would also inconvenience every non-Arizona

13

putative class-action plaintiff.  The lack of any real tie between the claims of this case and Arizona renders it highly inconvenient and improper here.

Because it is in the interests of justice, and for the convenience of all potential parties, as well as the relevant witnesses, if it is not dismissed this case should be transferred back to the Eastern District of Michigan.

**IV.    If this Court Elects not to Dismiss or Transfer this Case, it should be Stayed Pending Clarification from the FCC**

Congress granted the Federal Communications Commission ("FCC") the authority to make rules and regulations to implement the TCPA.  See 47 U.S.C. § 227(b)(2).    Pursuant to that authority, the FCC issues findings and makes rulings interpreting provisions of the TCPA, which findings and rulings are binding on the district courts of the United States.  Specifically, FCC orders are entitled to deference, and are not subject to challenge by district courts.  *See, e.g., Herrick v. GoDaddy.com LLC*, 312 F.Supp.3d 793, 796 n. 3 (D. Ariz. 2018).

Here, there are critical issues that underly Plaintiff's claim on which the FCC has announced it will be providing guidance soon.  Specifically, under the TCPA, a party with "prior express consent of the called party" does not violate the statute when calling or texting that party.  47 U.S.C. §227(b)(1)(A).  Key to the application of this exception is the meaning of the phrase "the called party."  While this phrase may seem relatively simple, its application has proven challenging.  The FCC acknowledged the difficulty with this phrase, declaring the "called party" term "ambiguous" in a 2015 clarifying order. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7691, 2015 WL 4387780, ¶ 74 (2015).

CORE/9991000.6389/152910242.1

The definition of the "called party" is especially important in the context of texts and calls to cellular telephone numbers. It is not uncommon for cellular telephone numbers to be reassigned from one individual to another. And, as the FCC acknowledged, "[t]here is no public wireless telephone number directory and individuals may change their phone numbers without notifying callers beforehand." *Id*. at ¶ 71. Thus, a party who has received express consent to call or text a cellular number may text or call a number in good faith believing they have valid consent, and yet still result in contact with a person who has not consented. *See id*., at ¶¶ 71-72.

In its 2015 Ruling, the FCC tried to navigate these two competing interests by: (1) defining the "called party" as the "current subscriber and customary users"; and (2) providing a one-call "safe harbor" to good-faith callers who reasonably believe they have consent. *Id*. at ¶ 72-3. But, in early 2018, the District of Columbia Circuit struck down the FCC's "called party" definition and one-call safe harbor rule as arbitrary and capricious. *See ACA Int'l v. FCC*, 885 F.3d 687, 707-08 (D.C. Cir. 2018). In that ruling, the court acknowledged the FCC's interpretation that a cellular subscriber's express consent "does not lapse with reassignment," hence allowing a "safe harbor" in the first place. *Id*. at 708. But the court also raised the question of "why should that [continuity of consent] necessarily stop with a single call?" *Id*. Failing to find an adequate answer in the FCC's ruling, the D.C. Circuit struck it down. *Id*.

Following the *ACA Int'l* decision, the FCC issued a call for new comments, including comments "on how to treat calls to reassigned wireless numbers under the TCPA." Public Notice, Consumer and Governmental Affairs Bureau Seeks Comment

15

on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision, DA 18-493, Released May 14, 2018, attached hereto as **Exhibit 3**.  The FCC's notice sought comment on questions such as whether the term "called party" refers to "the person the caller expected to reach," "the party the caller reasonably expected to reach," "the person actually reached, the wireless number's present-day subscriber after reassignment," or a "customary user…rather than…the subscriber herself?"  Ex. 3 at 3.  It also sought comments on reasonable reliance of callers on prior consent, and whether a safe harbor was necessary.  Ex. 3 at 3-4.  The period for comments originally ended on June 28, 2018, Ex. 3 at 1, but the FCC opened a brief supplemental comment period in October 2018, which ended October 17, 2018.  See Public Notice, Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision, DA 18-1014, Released October 3, 2018, attached hereto as **Exhibit 4**, at 1.  Thus, a new interpretative ruling is expected from the FCC addressing these issues soon.

The FCC's ruling on the meaning of the term "called party" and the questions of safe-harbor and continued consent are likely to have a significant impact on this case. The present case involves a minor amount of texting to a cellular telephone number that was reassigned to Plaintiff from one of Life for Relief's supporters.  That supporter gave Life for Relief consent to be texted.  Thus, the issue of continuity of prior consent (and possibly the applicability of a safe-harbor) is front-and-center in this dispute.  And, once the FCC rules on those issues, they are binding on this Court.  *See* 28 U.S.C. §§

CORE/9991000.6389/152910242.1

2341-51 (the "Hobbs Act," which divests district courts of the jurisdiction to review agency decisions).  Awaiting that decision provides ample reason for this Court to stay these proceedings – if it does not dismiss them in the first place.

This Court has broad discretion to stay these proceedings.  *See Rhines v. Weber*, 544 U.S. 269, 276 (2005) ("District courts do ordinarily have authority to issue stays where such a stay would be a proper exercise of discretion.").  For example, such a decision would be in the economic interests of all parties and the Court, and therefore this Court may stay the proceedings under its own inherent authority.  These issues are even more pronounced in this class action case given the significant time and effort the parties and the Court would have to expend to administer and litigate a class action lawsuit of the size and scope Plaintiff seeks, which Defendant would have no choice but to vigorously contest at a substantial cost.  Thus, a stay is both warranted and reasonable under the present circumstances.

## V.     Conclusion

For the above reasons, Life for Relief moves this Court for an order dismissing the present case for want of personal jurisdiction and venue, or, in the alternative, transferring this case to the Eastern District of Michigan.  Absent those orders, Life for Relief moves this Court to stay this case pending an upcoming ruling from the FCC as to the critical issues involved in this case.  A proposed order granting Life for Relief's Motion to Dismiss is attached hereto as Exhibit 5.

17

1     RESPECTFULLY SUBMITTED this 1st day of July, 2019.

2                                          **MILLER CANFIELD PADDOCK
                                           AND STONE, P.L.C.**
3

4                          By:    */s/ Jacob D. Koering*<sup></sup>
                                   225 W. Washington
5                                  Suite 2600
                                   Chicago, Illinois  60606
6
                                   Larry J. Wulkan
7                                  **STINSON LLP**
                                   1850 North Central Avenue, Suite 2100
8                                  Phoenix, Arizona 85004-4584

9                                  *Admitted Pro Hac Vice

10                                 Attorneys for Defendant

11

12                        **CERTIFICATE OF SERVICE**

       I hereby certify that on July 1, 2019, I electronically filed the foregoing with the
13
Clerk of the Court for the U.S. District Court for the District of Arizona by using the
14
CM/ECF System
15
              Nathan Brown
16            Brown Patent Law
              15100 N. 78th Way, Suite 203
17            Scottsdale, AZ 85260

18            Stefan Coleman
              Law Offices of Stefan Coleman, P.A.
19            201 S. Biscayne Blvd., 28th Floor
              Miami, FL  33131
20
              Avi R. Kaufman
21            Kaufman, P.A.
              400 NW 26th Street
22            Miami, FL  33127

23

24
                                   By:  */s/ Jacob D. Koering*
25

26
33908028.3\132747-00002
27

28
                                        18
CORE/9991000.6389/152910242.1